# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY D. THOMPSON, | Case No.: 1:18-cv-00137-BAM |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| ANDREW M. SAUL,[1] Commissioner of Social Security, | |
| Defendant. | |

## INTRODUCTION

Plaintiff Tracy D. Thompson ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

[2] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Doc. Nos. 5, 6.)

1

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

## **FACTS AND PRIOR PROCEEDINGS**

Plaintiff filed applications for supplemental security income and disability insurance benefits on November 7, 2013. AR 194-98, 202-07.[3] Plaintiff alleged that she became disabled on July 29, 2011, due to post-laminectomy, sciatica, major depressive disorder, back pain, herniation, and hypothyroidism. AR 132, 221, 225. Plaintiff's applications were denied initially and on reconsideration. AR 132-36, 140-44. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Judith A. Kopec held a hearing on June 10, 2016, and issued an order denying benefits on September 6, 2016. AR 18-31, 37-76. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-6. This appeal followed.

### **Hearing Testimony**

The ALJ held a hearing on June 10, 2016, in Stockton, California. Plaintiff appeared with her attorney, Nicole Franco. Impartial Vocational Expert ("VE") Mary Jesko also appeared. AR 39-40.

In response to questioning by the ALJ, Plaintiff testified that she lives with her husband and stepson. She drives half of the time, when she is alone, because her husband thinks her perception is not good. She drove to the hearing. AR 43-44. She attended some years of college after high school, and she is comfortable reading and writing English for her daily activities. She had vocational training in medical coding. AR 44-45.

When asked about her work history, Plaintiff confirmed that she had two major types of jobs— one as a medical coder and one in car sales. AR 45-46. Her work at the car dealerships was primarily the same. She last worked on July 29, 2011, when she was laid off after her surgery. When she returned to work, she was given less to do and then laid off. She could not say that her lay off was connected to

---

[3]  References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

her medical conditions. AR 47. Prior to being laid off, and after surgery, she was no longer able to do filing and carrying. After she was laid off, she spent two years searching for work. AR 48. She was never offered any positions. AR 49.

When asked about her pain, Plaintiff testified that she was currently in pain, with pressure in her tailbone down to her leg. The pain periodically goes down both legs. Plaintiff reported that she had fibromyalgia, which was discovered because she had aching pain in her leg and thigh. An orthopedic surgeon diagnosed her within the year prior to the hearing. AR 49-51. She rated her current pain as a seven out of ten. On good days, her pain is a four and on bad days an eight. In an average month, she probably has eight to ten bad days. Plaintiff reported that she improved after her first back surgery, but then began having bad pain again after a year, when another bulge was discovered. She had surgery and it improved, but she was starting to hurt again. She takes stronger narcotic medication now. AR 52-54.

In response to questions from her attorney, Plaintiff testified that she sleeps a lot. She has sleep apnea and uses a CPAP machine, which helps. She sleeps during the day, taking two to four-hour naps. She does not do any household chores, such as cooking, cleaning or laundry. Her medications make her sleepy, she also has headaches, a little vision disturbance and forgetfulness. She has headaches at least once a week. They will usually last until the next day or sometimes will be three days in a row. On a bad day, she will wake up, try to eat and then go back to bed. Her pain comes and goes, but depends on how much she does, like going to the grocery store, to dinner, or to church. AR 54-56.

When asked about her surgeries, Plaintiff reported that she had some relief from her symptoms after the surgeries, but she started hurting again. She returned to the surgeons at Stanford, but they told her that unless she could not walk, then she was to see her regular physician. AR 56.

When asked about her fibromyalgia, Plaintiff reported that she has not tried any specific treatments for it. She takes Wellbutrin. She also reported that she is being treated for depression and anxiety. When asked how those conditions affected her ability to return to the workforce, Plaintiff testified that she is forgetful and feels like people are talking about her because of her conditions. She feels ashamed. She has difficulty concentrating. She could probably do an activity for 10 to 15 minutes before being distracted. Plaintiff also reported that she avoids people because she feels unattractive and

embarrassed of her condition, even with her neighbors who have seen her go out in an ambulance. She no longer has friends that she does activities with. AR 57-58.

Plaintiff also testified that she has a condition under her foot, which makes it painful to walk. She can walk about fifteen minutes at one time before she has to stop due to pain or fatigue. She can stand for about 15 minutes before she gets pain in her back. Her most comfortable position is in a rocker or in her bed. Between 9:00 a.m. and 6:00 p.m., she spends about six hours either reclined or in bed. AR 58-59.

When asked about her weight, Plaintiff testified that her weight of about 230 has made it worse in terms of her symptoms and getting around. If she's heavier, it hurts her back more when she stands. However, even if she lost all her weight, she would still have sleep apnea. AR 59-60.

When asked about her day, Plaintiff testified that she watches a lot of TV. She watches the news, but dozes off while watching. She does not read because she cannot focus. She dropped out of Bible study because she could not remember what she was reading. She no longer receives any ongoing mental health treatment like counseling. Her doctor continues to prescribe her medication. She still has some anxiety. AR 60-63.

Following Plaintiff's testimony, the ALJ elicited testimony from VE Mary Jesko. The VE reported that she did not have any changes to the case analysis that she submitted as an exhibit. She confirmed that in her case analysis, transferable skills for medical coder included clerical, billing, and invoices. The reasoning, math and language level were listed as 3. Under care sales, the VE listed merchandising sales and the service code associated with motor vehicle and motor vehicle equipment. AR 64-65.

The ALJ asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume an individual of Plaintiff's age, education and work experience who could lift, carry, push or pull 10 pounds frequently, 20 pounds occasionally, could occasionally climb rams and stairs, balance, stop, kneel, crouch and crawl, but could not climb ladders, ropes or scaffolds or be exposed to unprotected heights. The VE testified that this individual could perform Plaintiff's past work as a medical coder as generally performed, car sales as generally performed, and two car sales jobs that she previously held as actually performed. The VE further testified that another example of a light job that

she could perform with transferrable skills would include file clerk one and file clerk two. AR 65-67. The VE confirmed that her testimony was consistent with the Dictionary of Occupational Titles. AR 67.

For the second hypothetical, the ALJ asked the VE to assume an individual of Plaintiff's age, education and work experience with the limitations identified in hypothetical one with the following changes or additions: the individual could sit for six hours, stand and walk for about six hours, but must alternate for 15 minutes after every one hour, remaining on task throughout, but could not be subject to external production requirements, such as quotas. The VE testified that this individual could perform Plaintiff's past medical work as a medical coder as generally performed but car sales would be precluded. The VE further testified that the hypothetical individual would be able to perform other work at sedentary or light with transferable skills. At the light level, the file clerk one and two positions would conform to this same hypothetical. There also would be other positions of a clerical nature, such as routine office clerk. AR 68-70

For the third hypothetical, the ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education and work experience with the limitations described in hypothetical number two. Additionally, this individual could sit for six hours, stand and walk for six hours, must alternate for 15 minutes after every one-half hour, remaining on task, and could have frequent one-on-one contact with the public. The VE testified that this individual could perform Plaintiff's past work as a medical coder. This individual also could perform other work, such as file clerk one and two and routine office clerk. AR 70-71.

For the fourth hypothetical, the ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education and work experience with the limitations and abilities described in hypothetical number three, with the additional limitation that the individual would be routinely and consistently off task at least 15 percent of an average workday and not doing productive work. Additionally, this individual would consistently be absent two days a month. The VE testified that this individual could not perform Plaintiff's past work or any other work on a sustainable basis. AR 71.

Following the ALJ's questions, Plaintiff's counsel asked the VE to clarify her meaning regarding transferability of skills. The VE testified that the skills that transfer would required little vocational

adjustment because they are in the same work environment, all in a clerical role with computers and computer keyboards. The VE excluded any skills from the car sales job. Instead, she was looking at the medical biller, with numerical record keeping and clerical tasks as the primary transferable jobs. AR 73.

When asked about the tolerance for absences with new employees during the probationary period, the VE testified that once hired such an employee falls under the same rules in terms of treatment as other employees as far as tolerance. This was based on the VE's 30 years of experience and the probationary period is the period of time in which an employer is willing to train an individual on any processes that are associated with the individual work environment. There is a lower expectation in terms of work productivity. As far as absenteeism, or off task work time, the tolerance is not contracted, and they have to be treated the same as any other employee that has been hired. AR 73-75.

**Medical Record**

The relevant medical record was reviewed by the Court, and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 18-31. Specifically, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since July 29, 2011, her alleged onset date. AR 23. The ALJ identified hypothyroidism, status-post thyroidectomy, degenerative disc disease of the lumbar, status post-laminectomy and hemilaminectomy and obesity as severe impairments. AR 23-26. The ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments. AR 26-27. Based on a review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work and could lift, carry, push or pull 20 pounds occasionally and 10 pounds frequently, could sit for six hours, stand and walk for six hours, but must alternate for 15 minutes after every 1 hour, remaining on task throughout, may not be subjected to external production requirements, such as quotas, could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but could not climb ladders, ropes and scaffolds or work around unprotected heights. AR 27-30. With this RFC, the ALJ

found that Plaintiff could perform her past relevant work as a medical coder. AR 31. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 31.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Plaintiff alleges that (1) the ALJ failed to properly consider her subjective symptom testimony; (2) the VE failed to properly identify her past relevant work; and (3) the ALJ failed to consider her mental impairments when assessing her RFC.

# **DISCUSSION**[4]

## A. Evaluation of Plaintiff's Testimony

Plaintiff first argues that the ALJ improperly rejected her subjective symptom testimony. In deciding whether to admit a claimant's subjective complaints of pain, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but rejected her statements concerning the intensity, persistence and limiting effects of those symptoms. AR 29. In so doing, the ALJ provided several specific, clear and convincing reasons for discounting Plaintiff's testimony.

First, the ALJ discounted Plaintiff's statements regarding the limiting effects of her symptoms as not entirely consistent with the medical evidence. AR 29. Although lack of medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). In this instance, the ALJ considered that despite Plaintiff's allegations of neuropathic symptoms in her left hand, physical examination showed she was neurologically intact with no sensory, motor or focal deficits. AR 29, 339. Plaintiff claims that this single examination does not properly summarize the record as a whole. Plaintiff is correct. However, Plaintiff overlooks that the ALJ did not limit her evaluation of the objective medical evidence to that

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

8

single examination. Rather, the ALJ provided a detailed summary of the medical record, citing, among other things, evidence that Plaintiff underwent a lumbar microdiscectomy in April 2011, and was cleared to return to work just one month later. AR 28, 303. Post-surgery, in September 2011, Plaintiff reported that her right leg had improved after surgery. Although she had some tenderness in her lower back, examination showed a normal gait and no foot or heel drop. She was directed to use over-the-counter medication for her symptoms. AR 28, 301. The ALJ also noted that treatment notes in 2012 and 2013 reflected that Plaintiff rarely sought treatment for her lower back pain. AR 28, 398-504; *see also* AR 355-63. In September 2013, she complained of back pain, but had full range of motion. AR 28, 505, 507. She continued to report back pain in October, November and December 2013, along with receiving lumbar epidural steroid injections. AR 515-16, 524-37, 601-04. The ALJ noted that subsequently, in January 2014, Plaintiff underwent a left-sided L5 hemilaminoty for partial discectomy. AR 28, 649-50. Although after surgery she complained of pain, diagnostic testing was negative. AR 28, 845, 856-60, 895-96, 931-34, 954-55. The ALJ also considered that subsequent treatment records did not include significant allegations of uncontrolled symptoms. AR 29, 991. 994-95, 1009-10, 1025-27, 1037-38, 1053-56, 1069, 1072-73, 1083-84, 1095-96, 1115, 1117-78, 1131-32, 1152-53, 1170, 1186-87, 1199-1201, 1215-17, 1231-32.

      Second, the ALJ appropriately considered that Plaintiff's statements of debilitating symptoms were inconsistent with record evidence concerning Plaintiff's activities in caring for her elderly father and her husband's parents. AR 29-30. An ALJ can properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112–1113 (9th Cir. 2012); *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an ALJ's determination to discount a claimant's testimony regarding the severity of those symptoms). According to the record, in July 2013, Plaintiff was reported be taking care of 2 elderly persons. AR 491. Even if Plaintiff's caregiver activities may not necessarily demonstrate that she was unimpaired, the ALJ reasonably found those activities inconsistent with Plaintiff's level of alleged impairment. *See Molina*, 674 F.3d at 1113 ("Even where [claimant's]

activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

Third, the ALJ considered that Plaintiff stopped working due to a business-related layoff rather than because of allegedly disabling impairments. AR 30. An ALJ properly may discount a claimant's subjective testimony where the alleged impairment is not the reason that the claimant stopped working. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (finding testimony that claimant's diabetes was not the reason he stopped working undermined his claims that his diabetes was among his disabling conditions); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (finding ALJ properly discounted allegations of pain where plaintiff reported at the hearing and to at least one doctor that he left the job because he was laid off, not because he was injured.); *see also Clausen v. Comm'r of Soc. Sec.,* No. 1:17-CV-01484-SAB, 2019 WL 498989, at *17 (E.D. Cal. Feb. 8, 2019) ("An ALJ may consider why a claimant left her last place of employment when making a credibility determination."); Marti Jean K. v. Comm'r, Soc. Sec. Admin., No. 6:18-CV-00109-HZ, 2019 WL 3061561, at *6 (D. Or. July 10, 2019) (ALJ properly found that evidence in the record "that the claimant stopped working for reasons not related to her allegedly disabling impairments," which "strongly suggests that the claimant stopped working because her boss retired, not because her symptoms were limiting."). Further, the ALJ considered that Plaintiff looked to return to work for several years following her layoff. AR 30. An ALJ may discount a claimant's testimony where he or she has continued to search for work because holding one's self out as capable of work "cast[s] doubt on a claim of disability." *See Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014).

For these reasons, the Court finds that the ALJ's assessment of Plaintiff's subjective complaints is free of reversible error. Even if one of the reasons provided could be found inadequate, there are sufficient other reasons provided to support the assessment of Plaintiff's subjective complaints. *See Batson*, 359 F.3d at 1197.

**B.     Vocational Expert Testimony**

Plaintiff contends that remand is required because the VE "did not provide a DOT code for medical coder in her testimony." AR 63. Here, Plaintiff correctly states that the VE did not provide a DOT code for medical coder in her testimony. However, during the hearing, the ALJ confirmed the

10

VE's submission of a "case analysis," which was marked in the record as exhibit 12E. AR 64. In that exhibit, the VE identified Plaintiff's past work as a medical coder and provided DOT code number 214.382-014. This DOT code corresponds with the position of "billing typist," alternately "billing clerk," "invoice clerk" or "order clerk." AR 296; DICOT 214.382-014, 1991 WL 671878. The VE did not fail to properly identify a DOT code for Plaintiff's past relevant work as a medical coder, and the ALJ properly relied on the VE's characterization of Plaintiff's past relevant work and the VE's cited DOT Code. AR 31. Remand is therefore not necessary to determine which DOT code constituted Plaintiff's past work.

### C. Mental Impairments

At step two of the sequential evaluation, the ALJ found Plaintiff's mental impairments not severe. Plaintiff contends, however, that the ALJ erred by failing to include her non-severe mental impairments in assessing her RFC and in the hypotheticals posed to the VE. In support of her claim, Plaintiff relies upon *Hutton v. Astrue*, 491 Fed.App'x 850 (9th Cir. 2012). (Doc. No. 17 at 27.)

In *Hutton*, the ALJ determined at step two that the claimant's post-traumatic stress disorder ("PTSD") caused mild limitations in concentration, persistence or pace, but was non-severe. *Hutton*, 491 F.App'x at 850. The ALJ subsequently excluded consideration of the claimant's PTSD in reaching an RFC because he determined that the claimant lacked credibility. In finding this error, the Ninth Circuit explained,

> Regardless of its severity, however, the ALJ was still required to consider Hutton's PTSD when he determined Hutton's RFC. See 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe[.]' "). The ALJ, however, failed to do so.

*Hutton*, 491 F.App'x at 850. The Ninth Circuit indicated that to properly determine the claimant's RFC, the ALJ "was required to consider [the claimant's] physical impairments and the 'mild' limitations his PTSD caused with concentration, persistence, or pace." *Id.* at 850-51.

Courts in this Circuit "have followed *Hutton* and found reversible error where the ALJ failed to include mild mental limitations in the assessment of the RFC," while other courts "have found *Hutton* to be inapplicable where the record demonstrates that the ALJ considered a claimant's non-severe mental

11

impairments before concluding that they did not cause any significant limitation necessitating inclusion in the RFC." *See George A. v. Berryhill*, No. 5:18-CV-00405-AFM, 2019 WL 1875523, at *5 (C.D. Cal. Apr. 24, 2019) (collecting cases).

Here, at step two, the ALJ found that Plaintiff's mental impairments caused no more than mild limitations in her activities of daily living, social functioning and concentration, persistence or pace. AR 25-26. Although the ALJ did not include any mental limitations in the RFC assessment, the ALJ expressly stated that his RFC assessment reflected the degree of limitation he found in the "paragraph B" mental function analysis," and the assessments finding her no more than mildly limited in mental functioning were "given great weight because they [were] consistent with the claimant's treatment records indicating generally well-controlled depression and anxiety through conservative treatment modalities." AR 26.

Moreover, at step four, the ALJ expressly considered evidence of Plaintiff's mental impairments. In particular, the ALJ considered treatment records reflecting that Plaintiff received treatment for situational stress while caring for her husband's elderly parents. AR 29, 339. The ALJ also considered opinion evidence from Plaintiff's treating doctor, Kenneth Hua, M.C., that certain psychological conditions affected Plaintiff's physical condition and frequently interfered with her ability to perform even simple tasks. AR 30, 670-74. The ALJ gave only partial weight to this assessment, limiting her to the postural and environmental restrictions assessed by Dr. Hua. AR 30. Plaintiff has not challenged the ALJ's evaluation of Dr. Hua's opinion. AR 30. For these reasons, the Court finds that the ALJ properly considered Plaintiff's non-severe mental impairments at step four before concluding that those non-severe impairments did not necessitate inclusion of any mental limitations in the RFC. *Hutton* therefore is inapplicable.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.

The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Andrew M. Saul, Commissioner of Social Security, and against Plaintiff Tracy D. Thompson.

IT IS SO ORDERED.

Dated: __**July 23, 2019**__          __/s/ Barbara A. McAuliffe__
                                       UNITED STATES MAGISTRATE JUDGE